---o---

WILLIAM H. OWENS, Respondent, vs. HANNIBAL AND ST. JOSEPH RAILROAD COMPANY, Appellant.

1. *Railroads—Damages—Killing of stock—Negligence—Bells, etc.—Contributory negligence.*—Under the statute of this State, (Wagn. Stat., 310, § 8) the failure, by the person in charge of a railroad train, to ring the engine bell or blow the whistle at a distance of at least 80 rods before reaching the crossing of a public highway, is negligence, and if, under such circumstances, cattle are killed at such crossing, such negligence is sufficient of itself to create a liability on the part of the railroad company, unless some contributory negligence can be shown on the part of the owner of the cattle.

2. *Railroads—Damages—Killing of stock—Bull suffered to run at large.*—Under the statute concerning animals running at large (Wagn. Stat., 134, § 5) it is not unlawful for bulls to run at large until after notice has been given to the owner, and even then the only remedy would be the one prescribed by the statute; and under this view the fact that a bull was so permitted to run at large, would be no defense to an action by his owner for his killing by a railroad train. (Schwarz vs. Hann. & St. Joe. R. R. Co., *ante*, p. 207, affirmed.

3. *Negligence—Question of law to be passed upon by court; of fact by the jury.*—Although in many cases where the facts from which negligence is to be inferred are undisputed, the question of negligence is one of law to be passed upon by the court, yet if the facts are disputed and the evidence conflicting, the question should always be left to the jury.

4. *Damages—Negligence—Burden of proof.*—In actions for damages arising from alleged negligence, the burthen of proof is always on the plaintiff.

5. *Damages—Railroads—Killing of stock—Efforts necessary to safety of passengers.*—Necessary efforts made by the agents of a railroad, after the discovery of cattle on the track, to save the train and passengers from threatened danger, would not render the railroad company liable even though they might result in injury to the cattle.

6. *Practice, civil—Trials—Instructions.*—When all the propositions of law contained in an instruction offered by one party, which are applicable to the facts, have already been declared in instructions given for the opposite party, the refusal of such first mentioned instruction is not error.

7. *Practice, civil—Trials—Verdict—Separate counts.*—When the petition sets up separate causes of action, stated in separate counts, with a separate demand for damages in each count, a general verdict for a general sum is improper, and.is good cause for arrest of judgment. This rule does not apply where there is but one cause of action, stated in different forms, in different counts. In such a case a finding upon any one of the counts would be a bar to any further recovery on any count in the petition, and a general verdict for plaintiff would be sufficient.

### *Appeal from Hannibal Court of Common Pleas.*

*James Carr*, for Appellant, cited Briggs vs. Taylor, 28 Verm., 180 ; Louisville, &c., R. R. Co. vs. Ballard, 2 Metc., [Ky.] 180.; Benno vs. Conn. River, &c., R. R. Co., 42 Verm., 375 ; Pitts vs. Fugate, 41 Mo., 405 ; Clark's Adm'r vs. Hann. & St. Joe R. R. Co., 36 Mo., 215 ; Wagn. Stat., § 5, ch. 6, p. 134 ; Sedg. on Stat. and Con. Law, 41, 87.

*George Shields*, for Respondent, cited Calvert vs. Hann. & St. Joe R. R., 34 Mo., 242 ; Garner vs. Hann. & St. Joe R. R., 34 Mo., 235 ; Thompson vs. N. Mo. R. R., 51 Mo., 190 ; Shearm. Neg., 46 ; 11 Wis., 160 ; 18 N. Y., 248 ; 37 Vt., 50 ; Wagn. Stat. 134, § 5 ; Lloyd vs. Hann. & St. Joe. R. R., 53 Mo., 509 ; Brady vs. Connelly, 52 Mo., 19 ; State, *ex rel.,* Headlee vs. Henslee, 54 Mo., 518 ; Polston vs. See, 54 Mo., 291–5.

VORIES, Judge, delivered the opinion of the court.

This action was brought to recover of the defendant, for damages occasioned to the plaintiff by killing of two head of cattle belonging to the plaintiff, by the negligence of the agents of the defendant in conducting a locomotive and train of cars on the defendant's railroad.

The petition consisted of two counts, the first of which charged that on a day named, defendant, by its agents, employees, cars and locomotives, carelessly and negligently ran over and killed of the property of plaintiff, one steer of the value of seventy-five dollars; that the defendant has not paid for the same, wherefore judgment is prayed, etc. The second count is exactly like the first, except the animal charged

to have been killed is described to be one bull, of the value of eighty dollars.

To each of these counts the defendant answered, denying the negligent killing of the animals therein respectively named.

The evidence on the part of the plaintiff tended to prove that the steer and the bull named in the different counts of the petition were run against and killed by the locomotive and cars of the defendant, at a point on the road where there is a public road-crossing; that the killing was done after dark in the evening, but that the night was light enough to see the cattle on the road for some considerable distance; that the head-light was burning brightly at the time, which would enable persons on the locomotive to have seen the cattle standing on the road for several hundred feet; that the train was running at a rapid speed, and that the speed was not reduced or abated as it approached the road-crossing where the cattle were standing; that no bell was rung, or whistle sounded on the locomotive or train of cars, until it approached to within less than fifty yards of the road-crossing, where the cattle were standing, and then, that the speed of the train was rather increased than diminished until it struck and killed the cattle.

The evidence further tended to prove, that the steer was worth from forty to seventy-five dollars, and that the bull was worth from fifty to eighty dollars.

The defendant, on cross-examination of one of the plaintiff's witnesses, offered to prove, by said witness, that from the condition and disposition of the cattle at the time of the killing, they would not have been apt to have run from the road from the mere noise occasioned by the ringing of a bell or the sounding or blowing of a steam whistle. This evidence was objected to and excluded by the court, and the defendant excepted.

On the part of the defendant the evidence tended to rebut any evidence of negligence, and to show that the night was dark and the cattle were not seen by the engineer until it was wholly impracticable to stop the speed of the train in

time to prevent a collision with the cattle; and that in such case it was the safest practice to increase rather than diminish the speed of the train, so as to throw the cattle entirely off the track, and thereby prevent the throwing of the train from the track, and thus lessen the danger to the passengers.

The evidence of the defendant also tended to prove that the whistle on the engine was sounded more than eighty rods from the road-crossing, and continued at intervals until the crossing was reached. There was evidence, also, to the effect that plaintiff's bull and steer were permitted to run at large outside of any inclosure for a great part of the time, and were so running at large at the time of the accident, although the bull had generally been kept up in a pasture, or attempted to be so kept up, but would break out of the pasture and was then suffered by the plaintiff to remain out running at large.

When the evidence was closed, the court, at the request of the plaintiff, instructed the jury as follows: "It was the duty of the servants and employees of defendant in charge of the locomotive and train, to cause the bell on the locomotive to be rung at a distance of at least eighty rods before reaching the crossing where the cattle were killed, and to keep said bell ringing until the train had reached the crossing, or to cause the steam whistle to be sounded at least eighty rods from said crossing, and cause it to be sounded at intervals until the locomotive reached said crossing; and if the jury are satisfied by the evidence that defendant's servants or employees in charge of said locomotive and train, did neglect to cause said bell to be rung, as above stated, and also further neglect to cause said whistle to be sounded, at least eighty rods before reaching said crossing, and did neglect to cause said whistle to be sounded at intervals until said train reached said crossing; such neglect to ring the bell, or sound the whistle, is, in contemplation of law, sufficient to charge defendant with any damage to plaintiff's stock resulting therefrom; and if the jury further find that the killing of plaintiff's stock was caused by such negligence, they should find the issue for plaintiff."

"2nd. The court instructs the jury, that if they believe from the evidence, that by the negligence or carelessness of the agents or employees of defendant in the operation of the locomotive engine and cars of the defendant the plaintiff's stock was run against and killed, then they will find for plaintiff."

"3rd. The court instructs the jury that if they find for plaintiff, then they will assess his damages at the reasonable market value of the stock killed at the time of such killing, with six per cent. interest thereon from said time of killing."

"4th. That it being admitted on the trial, that the stock of plaintiff, described in the petition, was struck and killed by defendant's locomotive and train at a point on defendant's road where the same is crossed by a public highway, it is incumbent on plaintiff to prove, to the satisfaction of the jury, that the servants or employees of defendant in charge of said train, were, at the time of said killing, negligent in the management of said train, and that said killing was caused by such negligence, and unless the jury find from the evidence, that the killing was caused by some negligence of defendant's servants or employees in charge of the locomotive and train, they should find the issue for defendant."

"5th. If the jury find, from the evidence, that the fact that the stock killed was on defendant's road at the crossing was not known to the engineer until the locomotive had reached a point so near the crossing, that to check the speed of the train, or endeavor to stop it, would have endangered the safety of the passengers, then the failure of the engineer to try to check the speed of said train, or his failure to try to stop the train, was not such negligence as to entitle plaintiff to recover in this action, nor would any acceleration of speed necessary to the safety of the train or passengers under the circumstances above stated, entitle plaintiff to recover."

The defendant objected to these instructions and excepted at the time.

The defendant then asked the court to instruct the jury as follows:

"1st. If the jury believe from the evidence, that the stock sued for was struck after dark; that the engine which struck said stock had a good head-light, and it was lighted and reflecting good light at the time said stock was struck; that the train which said engine was drawing was a passenger train running at the ordinary rate of speed as it approached the crossing of the public road on which said stock was struck; that said train was properly manned, and every man at his post, and the said engineer on the look out; that after the engineer in charge of said engine discovered that said stock was on the crossing of said road, it was impossible to stop said engine and train so as to prevent striking said stock; he had sounded the whistle on said engine, at at least eighty rods from said crossing and sounded it at intervals before arriving at said crossing; that it was safer to said train not to slow it before striking said stock, but on the contrary, it was safer to said train to run faster and knock said stock off the track, then defendant's agents and employees in charge of the said train were not guilty of negligence or carelessness in striking said stock, and they will find for the defendant. 2nd. If the jury believe from the evidence that the bull sued for was suffered by plaintiff to run at large, then they will find for the defendant."

These instructions asked for by the defendant were refused by the court and the defendant again excepted.

The jury then found for the plaintiff and assessed his damages at the sum of $91.87 1-2, for which, judgment was rendered.

The defendant then filed its several motions for a new trial, and in arrest of judgment, setting forth as grounds therefor, the instructions of the court excepted to, as well as that the petition and each count thereof failed to state a cause of action against the defendant; and that the verdict was a general verdict on the whole petition when it should have found separate findings on each count in the petition.

These motions being overruled by the court, the defendant again excepted and appealed to this court.

It is first insisted by the defendant, that the court improperly excluded evidence sought to be elicited by the defendant in the cross-examination of the plaintiff's witnesses. It is sufficient to say that the evidence sought to be obtained by the questions asked, was in our view of the case wholly irrelevant and immaterial as applicable to any issue in the case, and was therefore properly excluded. It is next insisted, that the court erred in giving the jury the instructions asked for by the plaintiff; that said instructions presented an *ex parte* statement of the case, and wholly ignored the defense made by the defendant on the trial.

The first instruction given told the jury, that if the servants of the defendant in charge of the train and locomotive of defendant, neglected to cause a bell to be rung or whistle to be. sounded at the distance of at least eighty rods from the road-crossing, as is required by the statute of this State, said neglect to comply with the law was sufficient in law to charge the defendant with any damage to plaintiff's stock resulting therefrom, and that if the jury found that the damage was caused by such negligence they should find for the plaintiff.

This instruction was a proper exposition of the law. The evidence was conflicting, as to whether the whistle was sounded, as the statute requires, or not, and it was proper to submit that question of fact to the jury; and if it was found by the jury that the bell had not been rung, nor the whistle sounded, as the law requires, that was sufficient of itself to create a liability on the part of the defendant, unless some contributory negligence was shown on the part of the plaintiff; and we think that there was no evidence in this case tending to show contributory negligence on the part of the plaintiff. (Howenstein vs. P. R. R. Co., 55 Mo., 33.) It is insisted by the defendant, as to the bull sued for by the second count in the petition, that the evidence shows that he was suffered to run at large, in violation of the 5th section of the act concerning animals running at large. (Wagn. Stat., 310, § 38.)

It was held at the present term of this court in the case of Schwarz vs. Hann. & St. Jos. R. R. Co., that this statute did

not make it unlawful for bulls to run at large until notice was given the owner under the provisions of the statute, and that even then, the only thing that could be done, was for those who saw proper to do so, to use the remedy specifically pointed out by the statute. That view of the statute disposes of the second instruction asked for by the defendant, as well as one ground of its motion in arrest of the judgment.

It is next insisted, that the second instruction given by the court submitted a question of law to the jury. It is true, that in many cases where the facts, in a particular case from which negligence is to be inferred, are wholly undisputed, the question of negligence is one of law to be passed upon by the court; but where the facts are disputed, and the evidence conflicting, the question should always be left to the jury. (Norton vs. Ittner, 56 Mo., 351.)

In the present case, the facts relied on to constitute negligence were disputed, and the evidence to support and the evidence to disprove negligence, was conflicting, and the court properly submitted the question to the jury.

The fourth instruction properly told the jury that the burden of proving negligence was on the plaintiff; and the fifth instruction told the jury that any necessary effort made by the agents of the defendant, after the discovery of the cattle on the road, to save the train and passengers from threatened danger, would not render the defendant liable although it might result in injury to the cattle. Taking all of the instructions given by the court together, we think they fairly and clearly presented the law of the case to the jury, and that they were properly given.

The defendant further insists, that the court improperly refused the first instruction asked for by it. It is sufficient to say, in reference to this instruction, that each proposition of law, contained in the instruction, which had the least application to the facts proved, or attempted to be proved on the trial, was fully given to the jury in the instructions already given, and had been given in a manner more simple and easy to be understood by the jury. The court therefore properly overruled said instruction.

The objection taken in the defendant's motion in arrest of the judgment, that the petition in its different counts failed to state facts sufficient to constitute a cause of action, I think, is not well taken.

The petition is very concise, but still it seems to state, in each count, sufficient facts to constitute a cause of action at common law. In fact, the petition is almost exactly similar to other petitions held to be good by this court. (Calvert vs. Hann. & St. Jos. R. R. Co., 34 Mo., 242.)

The only remaining question for our consideration is raised and insisted on by the defendant's motion in arrest of the judgment. It is therein insisted, that the court improperly rendered judgment on the verdict of the jury; that the jury made only a general finding in their verdict upon the whole petition containing two separate counts founded on separate and distinct causes of action, when there should have been a finding upon each count. This question has frequently been before this court, and it has been held by a series of cases running through the last fifteen or twenty years, that a general verdict for a general sum of damages, where there are several counts and causes of action set forth in the petition, is improper, and if an objection is made thereto, by motion in arrest of the judgment, the judgment should be arrested. (Pitts vs. Fugate, 41 Mo., 405; Mooney vs. Kennett, 19 Mo., 551; Clark's adm'r vs. Hann. & St. Jos. R. R. Co., 36 Mo., 215; Collins vs. Dulle, 45 Mo., 269; Bigelow vs. North Mo. R. R. Co., 48 Mo., 510.)

This rule does not, however, apply where there is really but one cause of action, stated in a different manner in different counts so as to meet any possible state of facts that may be shown by the evidence. In such case, a finding upon any one of the counts would be a bar to any further recovery on any count in the petition, and a general verdict for the plaintiff would be sufficient. (Brownell vs. The Pacific R. R. Co., 47 Mo., 239.)

In the case under consideration, the causes of action stated in the different counts in the petition are stated as separate and distinct causes of action, growing out of two different

and distinct injuries to a different subject matter, and although we may believe from the evidence in the case, that both counts, or the cause of action stated in each, might properly have been included in one and the same count, yet they are not so stated and we must decide the case on the petition as it is, and not as it might have been drawn. The verdict was improper, and the defendant's motion in arrest should have been sustained.

The judgment will be reversed, and the case remanded; the other judges concur.