FRANK KILLIAN, Appellant, v. CHICAGO, MIL-WAUKEE & ST. PAUL RAILWAY COMPANY, Respondent.

**Kansas City Court of Appeals, December 17, 1900.**

1. **Negligence:** RAILROAD CROSSING: SIGNALS: PROXIMATE CAUSE.   The mere failure to give proper signals of the movements of an engine in a railway yard will not create a liability for an injury, unless the failure is the proximate cause of the injury.

2. ———: ———: ———: ———.   Plaintiff moved across the first track of a series of five and then stopped to look and listen for an approaching train.   At this moment an engine on the fourth track, without signal, moved out in front of plaintiff's horse, stopped and backed.   Plaintiff's horse took fright at the escaping, hissing steam and ran away injuring plaintiff, etc.   Held, plaintiff could not recover since the failure to give the signal was not the proximate cause of his injury.   Cases distinguished.

3. ———: ———: ———: CONTRIBUTORY NEGLIGENCE.   Held, also, plaintiff was guilty of contributory negligence in not stopping and listening before crossing the first track—especially in view of the great impracticability of giving signals of the movements of a switch engine in a railroad yard.

Appeal from the Livingston Circuit Court.—*Hon. E. J. Broaddus*, Judge.

**AFFIRMED.**

*Davis & Sons, Kitt & Son, Sheetz & Sons* for appellant.

(1)  The defendant was guilty of negligence, which caused the injury to plaintiff.   Kennayde v. Railroad, 45 Mo. 262; Bauer v. Railroad, 69 Mo. 223; Huckshold v. Railroad, 90 Mo. 548; Baker v. Railroad, 147 Mo. 140; Ernst v. Railroad, 90 Am. Dec. 761; Beopple v. Railroad, 58 S. W. Rep. 231.   (2) The question of negligence was for the jury. Bauer v. Railroad, 69 Mo. 219; Petty v. Railroad, 88 Mo. 315; Davis v. Railroad, 46 Mo. App. 180; Hodges v. Railroad, 71 Mo. 50; Baker v. Railroad, 122 Mo. 533; Masterson v. Railroad, 49 Mo. App. 6; Stevens v. Railroad, 67 Mo. App. 363; O'Connor v. Railroad, 94 Mo. 150.

*Chas. A. Loomis* for respondent.

(1)  A railroad company is not liable for injuries resulting from a horse becoming frightened upon a highway, at the mere sight of its trains, or the noises necessarily incident to the running of its trains in the operation of its road.   3 Elliott on Railroads, sec. 1264; Favor v. Railroad, 114 Mass. 350; Old Colony Railroad Co., 140 Mass. 79; Flint v. Railroad, 110 Mass. 222; Whitney v. Railroad, 69 Me. 208; Hahn v. Railroad, 51 Cal. 605; Burton v. Railroad, 4 Harr. (Del.), 252; Yinst v. Railroad, 167 Pa. St. 438; s. c., 31 Atl. R. 687; Ochiltree v. Railroad (Ia.), 62 N. W. Rep. 7, 11; Heininger v. Railroad, 59 Minn. 458; s. c., 61 N. W. Rep. 558; Railroad v. Haskett, 10 Ind. 409; Railroad v. Thomas, 60 Ind. 107; Railroad v. Trowbridge, 125 Ind. 391; Railroad v. Schmidt, 134 Ind. 16.   (2)  Plaintiff must stop, look and listen for approaching trains at a point where by so doing he can see or hear the approaching trains, before passing upon or over a crossing.   And if he does not do so he can not recover for the injury received by a collision with the train. If there are obstructions at some points and no obstructions at

other points, he must stop at a point where there are no obstructions. He can not be heard to say that he looked and did see, or listened and did not hear what was in sight or hearing. Lane v. Railroad, 132 Mo. 4; Kelsay v. Railroad, 129 Mo. 362; Vogg v. Railroad, 138 Mo. 172, and cases cited on p. 181; Maxey v. Railroad, 113 Mo. 1, and cases cited on p. 11; Payne v. Railroad, 136 Mo. 562; Lynch v. Railroad, 84 Wis. 348, a leading case. Hayden v. Railroad, 124 Mo. 566. (3) The place where the plaintiff should stop, look and listen must be a place out of danger of injury by train, should one pass over the crossing. "He must stop at a convenient distance from the crossing." Payne v. Railroad, 136 Mo. 562; Kelsay v. Railroad, 129 Mo. 362. (4) Failure to give the statutory signal will not render the company liable if that is not the proximate cause of the injury. The plaintiff must prove affirmatively that the failure to give the statutory signal was in fact the cause of the injury, before he can recover. 3 Elliott on Railroads, sec. 1264 and cases cited in n. 2; Karle v. Railroad, 55 Mo. 476, 483; Stoneman v. Railroad, 58 Mo. 503; Holman v. Railroad, 62 Mo. 562; Wallace v. Railroad, 74 Mo. 594; Kelley v. Railroad, 75 Mo. 138; Braxton v. Railroad, 77 Mo. 458; Stepp v. Railroad, 85 Mo. 229; Moberly v. Railroad, 17 Mo. App. 518, 535; Reed v. Railroad, 50 Mo. App. 504, 506; McDonald v. Railroad, 86 Tex. 1; s. c., 40 Am. St. Rep. 803 and note; Gibson v. Delaware, etc., Co., 65 Vt. 213; s. c., 36 Am. St. Rep. 802 and note; Hudson v. Railroad, 101 Mo. 13; Barkley v. Railroad, 96 Mo. 367. (5) The law very clearly defines what the term "ordinary care under the circumstances" shall mean in these cases. The quantum of care is exactly prescribed as a matter of law. And whether a given act in the chain of causation is the proximate cause of such injury, is a question of law for the court. Payne v. Railroad, 136 Mo. 562, l. c. 576 and cases cited; Henry v. Railroad, 76 Mo. 288, 293; Hudson v. Railroad, 101 Mo. 14.

ELLISON, J.—The plaintiff's horse attached to a small wagon became frightened at the noise of escaping steam from one of defendant's engines and ran away, throwing plaintiff to the ground and inflicting personal injury, for which he brought this action and failed in the circuit court, that court sustaining defendant's demurrer to the evidence.

It appears that defendant's tracks (five in number running north and south, four being switch tracks) cross Third street in the city of Chillicothe. That plaintiff was driving east along Third street and that in approaching the tracks for a considerable distance he looked up and down the tracks, though he did not stop, but could not see well on account of the obstruction made by different objects, mainly box cars standing on the tracks and by buildings. That he finally drove across the first track and stopped for the purpose of looking and listening and that immediately upon his stopping, an engine on the fourth track, without signal or warning, moved out from behind the box cars to a point half way across the street stopped and immediately began to move back again. That in the backward movement steam shot out from the sides of the engine with a hissing noise which frightened plaintiff's horse with the result already stated.

No complaint is made that the engine was not properly manipulated but the point of negligence relied upon is that defendant's servants gave no warning signal of the engine's movements. The law is that notwithstanding a failure on the part of a railway corporation's servants to give the signals of warning required by prudence and law, it does not necessarily follow that a liability follows for a resulting injury. The injury must be proximately caused by the failure to perform the duty. 3 Elliott on Railroads, sec. 1264; Karle v. Railroad, 55 Mo. 476-483; Stoneman v. Railroad, 58 Mo. 503; Wallace v. Railroad, 74 Mo. 594; Kelley v. Railroad, 75 Mo.

138; Braxton v. Railroad, 77 Mo. 458; Stepp v. Railroad, 85 Mo. 229; Moberly v. Railroad, 17 Mo. App. 518, 535; Hudson v. Railroad, 101 Mo. 13; Barkley v. Railroad, 96 Mo. 367.

It does not clearly appear from the record, but we infer that the engine was and had been standing on the fourth track, which was a switch track. It does not appear from what purpose or what was the cause or object of the movement it made forward into the street and back again. It is fair to assume that it was necessary to the business of defendant in movements made on switch tracks in cities and towns. These movements are made upon orders or signals and immediately follow these directions. While the movement should be preceded and frequently accompanied by proper warning yet the very nature of the business is such that it can not be expected that the operator will sound a warning for the benefit of persons who are so far away as not to be in danger from the movement. Practically, the operator rarely knows more than a moment in advance just when he will make certain movements with an engine on sidetracks, he being controlled by directions and signals from others. Defendant should have given some warning just preceding the movement of the engine out into the street, but it is apparent that its failure to do so did not affect plaintiff in the least. Plaintiff would have been just where he was, for that was a place of safety and was where he stopped to look and listen. If the engine bell had been sounded just before starting up, plaintiff would have been at the same place and the same result would have followed.

It has been held that the signals required of engines and trains at certain distances when approaching crossings are not alone to avoid collisions but are also to enable travellers to halt their horses at sufficient distances from the track to avoid fright as much as possible. Quigley v. Canal Co., 142 Pa. St. 388. But this case must be distinguished from a case where

the warning is demanded from engines which in necessary business at such places are moving back and forth on switch tracks. At such a place and under such circumstances, it is practically impossible, as has just been explained, for the operator of the engine to give warnings any length of time prior to his movement, for the reason that he does not know in advance when the movement will be required. We do not pretend to state a definite rule which would cover any and all conditions and situations which might exist at switching points, but certainly it must apply to this case. Here the plaintiff was guilty of negligence in driving on to and across the first switch track, thus placing himself among the tracks before he stopped to look and listen. He testified that when he did stop it was only a moment of time until the engine moved out on one of the other tracks in front of him. If he had stopped to look and listen before he got to the tracks, it is evident that the engine would have made the movement complained of when he would have been a sufficient distance away to have avoided the fright which the nearness of the engine gave his horse. The horse was gentle and had been driven about cars and engines, so that it is certain the fright at this time was occasioned by the horse being so close to the engine.

In our opinion, the plaintiff was guilty of contributory negligence which caused the accident, and that it can not be attributed to the negligence of defendant in failing to sound a warning from the engine of the movement made. It follows that the trial court properly sustained a demurrer to the evidence and the judgment will be affirmed. All concur.